IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 05-365 |
| | ) |
| CAROL DORR | ) |

O P I N I O N

DIAMOND, D.J.

On December 2, 2005, the grand jury returned a one-count indictment against defendant Carol Dorr ("defendant") charging her with conspiracy to commit an offense against the United States, that is, passing counterfeit securities of organizations involved in interstate commerce, in violation of 18 U.S.C. §371. Presently before the court is defendant's motion to suppress statements and items seized from her (Document No. 36) and defendant's motion to suppress evidence obtained from a laptop computer (Document No. 38). A hearing on this matter was held on August 23, 2006. For the reasons set forth herein, defendant's motions will be denied.

At the hearing, U.S. Postal Inspector David Anderchak and Pennsylvania State Trooper Jarred Slater testified on behalf of the government. According to Inspector Anderchak, McKeesport Police contacted him concerning Sarah Demery, who had admitted to passing counterfeit checks for defendant. Defendant's method of operation was to rent a hotel room, manufacture counterfeit checks on a laptop computer, print the checks, and recruit people to pass

the counterfeit checks. Demery identified defendant in a photo array. Demery said she had seen defendant print checks while she was staying at the Comfort Inn in Monroeville and at Conley's Inn in Irwin. Irwin police subsequently provided two counterfeit checks, one of which was made payable to Sarah Demery, that had been found in the hallway of Conley's Inn on July 27, 2005. It was confirmed through the investigation that defendant had been staying at Conley's Inn at that time.

Inspector Anderchak testified that George Stafford, Elizabeth Weimer, Meg Varner, Michael Dekleva and Richard Gongaware also provided similar information that defendant produced counterfeit checks on a laptop computer and then provided them to others to negotiate. These individuals indicated that they had cashed counterfeit checks for defendant.

Inspector Anderchak also testified that state police who had been investigating the counterfeit check ring received a call that George Stafford had the laptop computer which defendant had been using to produce counterfeit checks. Trooper Dixon and Trooper Shepard went to what they thought was Stafford's residence to obtain the computer, but it turned out to be Stafford's parents' residence. Stafford was tracked to be staying at the Comfort Inn in Wilkins Township. Officer DeMarco of the Wilkins Township police located Stafford at the Comfort Inn. Officer DeMarco called Trooper Dixon on a cell phone and put Stafford on the line.

AO 72
(Rev. 8/82)

Stafford was advised of the investigation, he indicated his willingness to cooperate, and he stated he was going to turn over the laptop computer to the police. Officer DeMarco confirmed with Stafford that he was voluntarily turning over the computer. Officer DeMarco seized a Toshiba laptop computer, HP color printer and a blue folder that contained sheets of check paper. Subsequently, the government obtained a warrant to search the contents of the computer.

Inspector Anderchak testified that he interviewed Richard Gongaware regarding defendant. Initially, investigators thought that Gongaware was a victim in this case because he explained that defendant used his checking account number and routing number to produce counterfeit checks. However, Gongaware stated that defendant had provided him with several counterfeit checks, which he admitted to cashing at various stores. Gongaware gave defendant half the money from the cashed counterfeit checks.

When Inspector Anderchak interviewed Gongaware on October 18, 2005, he said that defendant had made arrangements to meet him that evening at his residence in Greensburg to give him additional counterfeit checks to pass. Inspector Anderchak and others, including Pennsylvania State troopers, conducted surveillance at Gongaware's residence. According to Inspector Anderchak's testimony, when defendant arrived at Gongaware's residence, she immediately was arrested by federal agents and the

3

state police. She was taken into custody by the state police, who filed a criminal complaint after the arrest. The state charges were dismissed after a federal criminal complaint was issued. Inspector Anderchak testified that the investigation in this case was summarized in the affidavit in support of the federal criminal complaint, which was admitted into evidence at the hearing.

Inspector Anderchak testified that a search of defendant's person after she was arrested uncovered counterfeit checks and an amount of cash. In addition, defendant's vehicle was transported from where it had been parked on the street in Greensburg to the Postal Inspection Office's facility on the North Side of Pittsburgh. An inventory search of the vehicle was performed, which uncovered various bank statements, miscellaneous paperwork, check paper and other items as described in the inventory search list that was admitted into evidence at the hearing. Inspector Anderchak testified that the inventory search was performed pursuant to Postal Inspection Office policy which requires vehicles to be searched before they are parked in the underground garage at the facility for safety purposes and to ensure that the vehicle owner's property is not lost.

Inspector Anderchak also testified that defendant was interviewed subsequent to her arrest. Her interview was conducted after a Pennsylvania State trooper gave her a Miranda warning. According to Inspector Anderchak, defendant voluntarily provided

4

information during the interview, and she was not coerced in any way.

Trooper Slater also testified concerning defendant's interview. Trooper Slater read a <u>Miranda</u> warning to defendant. Defendant stated that she understood her rights, but she wished to make a statement. According to Trooper Slater's testimony, defendant first was given the <u>Miranda</u> warning, she next made verbal statements to the agents,[1] and the interview concluded with defendant making a written statement. In Trooper Slater's presence, defendant completed a form entitled "Custodial Written Statement", which was admitted into evidence at the hearing. The form indicates defendant's understanding of her rights and her desire to make a statement. It also contains a written narrative by defendant, and her acknowledgment that she gave her statement voluntarily. Trooper Slater further testified that no threats were made to defendant during the interview, she was not coerced in any way, and she never invoked her right to counsel or her right to remain silent.

---

[1] Inspector Anderchak also testified that defendant made verbal statements to him and another agent for several hours on the evening of her arrest concerning her knowledge of producing counterfeit checks.

5

<u>Defendant's Motion to Suppress</u>
<u>Statements and Items Seized From Defendant (Document No. 36)</u>

Defendant raises two issues in this motion. One issue relates to items seized from her after she was arrested. The other issue involves statements she made to agents when she was interviewed after her arrest. Defendant argues the items seized from her, as well as her statements, should be suppressed. For the reasons explained herein, defendant's argument lacks merit, and her motion to suppress evidence and statements will be denied.

Defendant first claims that the items seized from her after her arrest should be suppressed because the officers executed a warrantless search and seizure without probable cause, and no exception to the warrant requirement applies in this case. In particular, defendant believes the search incident to arrest exception to the warrant requirement does not apply because she was searched and items were seized from her before the state criminal complaint was issued. Defendant's position is that the arrest occurred after she was searched.

When a defendant seeks to suppress evidence, she bears the initial burden of "establish[ing] a basis for [her] motion, *i.e.*, the search or seizure was conducted without a warrant...." <u>United States v. Johnson</u>, 63 F.3d 242, 245 (3d Cir. 1995). Once the defendant makes this showing, the burden shifts to the government

AO 72
(Rev. 8/82)

to demonstrate that the search and seizure was reasonable. Id. Here, there was no search warrant, so the government bears the burden to show the search and seizure was reasonable. For the reasons explained herein, the court concludes that the government has sustained its burden.

Defendant contends that she was arrested after agents searched her person when she arrived at Gongaware's residence on October 18, 2005, thus suggesting that only after she was searched was there probable cause to arrest her. "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification." Sibron v. New York, 392 U.S. 40, 63 (1968). According to Inspector Anderchak's testimony, which the court finds credible, defendant immediately was arrested when she arrived at Gongaware's residence, and a search incident to her arrest followed. As a result, the following legal principles apply.

In order for a warrantless arrest to be lawful, it must be based on probable cause. United States v. Watson, 423 U.S. 411, 423-24 (1976). In Watson, the Supreme Court held that probable cause for a warrantless arrest exists when the officer has reasonable grounds to believe that an offense has been or is being committed. Id. at 417-18. According to Inspector Anderchak's testimony, at least six individuals had identified defendant as the person who produced counterfeit checks and provided them to

various people to pass. The individuals provided virtually identical accounts of defendant's method of operation in producing counterfeit checks. In addition, defendant's arrest took place when she arrived at her scheduled meeting with a cooperating witness to provide him with additional counterfeit checks to pass. Given these circumstances, the agents and officers had reasonable grounds to believe that an offense had been committed. Thus, there was probable cause to arrest defendant.

After making a lawful arrest, the police may conduct a warrantless search incident to the arrest to secure weapons and to prevent the concealment or destruction of evidence. United States v. Robinson, 414 U.S. 218, 234-35 (1973). "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." Id. at 235. The search of defendant's person which uncovered business checks in the name of Dorr Consulting Services and cash was a lawful search incident to her arrest.

In addition, the inventory search of defendant's vehicle was proper despite her assertion to the contrary. Evidence discovered during an inventory search of a vehicle conducted pursuant to standardized procedures is admissible, unless the police acted in bad faith or for the sole purpose of the investigation. Colorado v. Bertine, 479 U.S. 367, 373-74 (1987). Here, Inspector

8

AO 72
(Rev. 8/82)

Anderchak testified that the inventory search was performed pursuant to Postal Inspection Office policy which requires vehicles to be searched before they are parked in the underground garage at the facility for safety purposes and to ensure that the vehicle owner's property is not lost. There is no evidence that the agents who conducted the inventory search acted in bad faith or for the sole purpose of the investigation. Thus, the inventory search of defendant's vehicle does not violate the Fourth Amendment. For these reasons, as well as those discussed above, the items obtained from defendant's person and from her vehicle subsequent to her arrest properly were seized. Accordingly, defendant's motion to suppress those items will be denied.

Defendant's argument that statements she made after her arrest should be suppressed likewise lacks merit. According to defendant, statements she made to Postal Inspector Anderchak when he interviewed her on October 18, 2005 after her arrest should be suppressed because they were made in violation of United States v. Miranda, 384 U.S. 436 (1966). Defendant contends that she was compelled to speak to Inspector Anderchak without having been advised of her Miranda rights.

The Supreme Court in Miranda stated that a suspect informed of her right to counsel and right to remain silent may waive those rights if the waiver is "made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. This determination

9

must be made considering the "totality of the circumstances". Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983). In analyzing the totality of the circumstances, courts must consider the facts of the particular case, including the background, experience and conduct of the defendant. Id. In addition, the government has the burden of proving the waiver by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).

Based on testimony and documentary evidence submitted at the hearing, the court concludes that the government sustained its burden. Both Inspector Anderchak and Trooper Slater testified at the hearing that defendant properly was advised of her Miranda rights and that she waived those rights and gave a statement. In addition, the Custodial Written Statement form which was entered into evidence at the hearing indicates that defendant was advised of her Miranda rights, that she understood her rights and that she wished to make a statement. Accordingly, the court finds that defendant was given a Miranda warning prior to being interviewed, but she elected to waive her rights and make a statement.

Despite these facts, defendant insinuates that her statements were coerced because "she was compelled to speak to Postal Inspector Anderchak." Statements not obtained in violation of a person's Miranda rights are nonetheless subject to suppression as violative of due process if the statements are coerced or involuntary. Arizona v. Fulminante, 499 U.S. 279, 288-91 (1991).

AO 72
(Rev. 8/82)

A statement is coerced or involuntary if the behavior of "law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined." Rogers v. Richmond, 365 U.S. 534, 544 (1961).

The court must examine the totality of the surrounding circumstances in order to determine if a confession was coerced or involuntary. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). To determine whether a defendant's will was overborne, the totality of the circumstances analysis includes consideration of the accused's characteristics and the details of the interrogation. Id. The factors to be considered include: the youth of the accused; her lack of education or her low intelligence; the lack of any advice to the accused of her constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep. Id.

Under the totality of the circumstances in this case, the court concludes that defendant's statement was not coerced. Defendant is an adult, and there is no indication that she lacked the education or intelligence to understand what had been explained to her prior to her interview. Defendant was advised of her constitutional rights and acknowledged her understanding of those rights. There is no evidence that defendant was physically punished, denied food or sleep or that she was subjected to

11

AO 72
(Rev. 8/82)

prolonged questioning. Furthermore, both Inspector Anderchak and Trooper Slater credibly testified that defendant was not threatened or subjected to any coercion. For these reasons, the court concludes that defendant's statements were not coerced. Therefore, defendant's motion to suppress statements she made when she was interviewed after her arrest will be denied.

Defendant's Motion to Suppress Evidence (laptop computer) (Document No. 38)

Defendant next challenges the warrantless seizure of the laptop computer.[2] Defendant contends the police did not have probable cause to seize the laptop computer on August 15, 2005 without a warrant. According to defendant, every individual who claimed she used the laptop computer to produce counterfeit checks was involved in the counterfeit check scheme, and they therefore had an interest to ensure they were not found to be the ring leader of the operation. Other than information from these tainted sources, defendant claims the government does not have evidence to prove the laptop computer that was seized was used to produce the checks.

Contrary to defendant's argument, the police had probable

---

[2]Defendant acknowledges that the contents of the laptop computer were searched pursuant to a valid search warrant. See Memorandum in Support of Motion to Suppress Evidence (Document No. 39) at 7.

12

cause to seize the laptop computer on August 15, 2005. By that time, several individuals (Weimer and Varner) who had been interviewed admitted they had passed counterfeit checks for defendant, and also indicated they had observed defendant produce the counterfeit checks on a laptop computer. Even though those who provided information about defendant's activities were involved in passing counterfeit checks, their individual accounts of the situation corroborated one another. Therefore, the police had reasonable grounds to believe that an offense had been committed and that the computer contained evidence of a crime. Furthermore, the police were justified in seizing the laptop computer when they did because it was contraband that would be subject to forfeiture. For all of these reasons, the court concludes that the seizure of the laptop computer was lawful,[3] as was the subsequent search of its contents pursuant to a valid warrant.

---

[3] Defendant also notes that the police received a tip about the location of the computer on August 13, 2005, thus they could have obtained a warrant before seizing it on August 15th. Also according to defendant, the fact that investigators waited another two months after seizing the computer before obtaining a search warrant to view its contents, indicates that the computer did not need to be seized immediately. Defendant also maintains that Stafford did not have the authority to consent to turn over the computer to the police. Having determined that probable cause existed to seize the laptop computer as explained above, the court does not find it necessary to address these additional arguments.

AO 72
(Rev. 8/82)

Accordingly, defendant's motion to suppress the laptop computer will be denied. An appropriate order will follow.

*Gustave Diamond*
Gustave Diamond
United States District Judge

Date: *September 26, 2006*

cc: Brendan T. Conway
    Assistant U.S. Attorney

    Charles M. Schwartz, Esq.
    4048 Mt. Royal Boulevard
    Allison Park, PA 15101

AO 72
(Rev. 8/82)